# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-00570-RM-KMT

**STEPHEN LAWTON**, a citizen of Texas

Plaintiff,

v.

**HOTSPUR SPORTS COMPANY, INC.**, a Colorado corporation headquartered in Colorado;
**CHARTER SPORTS, INC**., a Colorado corporation headquartered in Colorado;
**CHARTER SPORTS BLUE SKY**, a Colorado corporation or business entity headquartered in Colorado;
**CHARTER SPORTS**, a Colorado corporation or business entity headquartered in Colorado,

Defendants.

## FIRST AMENDED COMPLAINT FOR DAMAGES

NOW COMES the Plaintiff, STEPHEN LAWTON, by and through his attorney, Paul J. Komyatte of The Komyatte Law Firm LLC, and for his FIRST AMENDED COMPLAINT against the above-named Defendants states as follows:

### NATURE OF ACTION

1. This is a product liability action arising out of a ski accident in which Plaintiff suffered catastrophic, life threatening injuries, due to defective and deficient ski bindings designed, tested, manufactured, adjusted, marketed, promoted, rented and leased by the Defendants.

### JURISDICTION AND VENUE

2. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because the

Plaintiff and the Defendants are citizens of different states and the value of the matter in controversy exceeds seventy-five thousand dollars ($75,000.00).

3. Venue is proper in the United States District Court, District of Colorado, pursuant to 28 U.S.C. §1391(a) because the subject incident and injuries giving rise to the causes of action occurred in this judicial district.

## PARTIES

4. At all times relevant and on or about March 9, 2014, Plaintiff Stephen Lawton was a citizen of the state of Texas. Stephen Lawton may hereinafter be referred to as "Plaintiff."

5. At all times relevant and on or about March 9, 2014, Defendant Hotspur Sports Company, Inc. was a Colorado Corporation authorized and doing business in the State of Colorado and with its principal place of business located in Colorado. Hotspur Sports Company, Inc. can be served with process by serving its registered agent Michael Anthony Bartsasuis at 120 Offerson Road, Avon CO 81620. It is believed that Defendant Hotspur Sports Company, Inc. may do business as Charter Sports, Inc., which is a registered trade name for Hotspur Sports Company, Inc. It is believed that Defendant Hotspur Sports Company, Inc. may also do business under various other trade names, including Charter Sports Blue Sky and Charter Sports.

6. At all times relevant and on or about March 9, 2014, Defendant Charter Sports, Inc. was a Colorado Corporation authorized and doing business in the State of Colorado and with its principal place of business located in Colorado.

7. At all times relevant and on or about March 9, 2014, Defendant Charter Sports Blue Sky was a Colorado Corporation or business entity authorized and doing business in the State of Colorado and with its principal place of business located in Colorado.

8. At all times relevant and on or about March 9, 2014, Defendant Charter Sports

2

was a Colorado Corporation or business entity authorized and doing business in the State of Colorado and with its principal place of business located in Colorado.

9. Hotspur Sports Company, Inc., Charter Sports, Inc., Charter Sports Blue Sky, and Charter Sports will hereinafter collectively be referred to as "Hotspur Sports" and/or "Defendants."

## COMMON ALLEGATIONS

10. On or about March 9, 2014, Plaintiff was skiing at the Breckenridge ski resort using a pair of K2 skis equipped with Salomon Z-12 bindings. While skiing on the first run of the morning in a safe and foreseeable manner, both bindings released and Plaintiff fell and slid down the ski run and impacted one or more trees or other structures. Plaintiff did not fall before the bindings released, nor did he ski over a bump or other obstruction that would otherwise cause a bindings release. The bindings released prematurely, for no apparent reason. His skis were found perfectly planted on the ski run parallel to one another and close together. Plaintiff suffered life threatening injuries requiring hospitalization, multiple surgeries, and extensive medical care, treatment and rehabilitation.

11. Plaintiff is an experienced skier. He stepped into the bindings properly and securely on the morning of March 9, 2014.

12. Plaintiff had rented the skis and bindings he was using from Hotspur Sports. Initially, Plaintiff had rented a different pair of skis and bindings on March 8, 2014. However, Plaintiff noticed at the end of that day that one of the skis had some damage near the rear and also had a sticker on it that said the skis should not be rented. He returned those skis to Hotspur Sports, and Hotspur Sports replaced those skis with the set of K2 skis and Salomon bindings that Plaintiff was using at the time of the subject accident on March 9, 2014.

3

13. The subject K2 skis and Salomon bindings being used by the Plaintiff on March 9, 2014 were warranted, promoted, advertised, installed, assembled, marketed, adjusted, tested, prepared and rented by Hotspur Sports.

14. Hotspur Sports prepared, assembled, installed, adjusted and tested the subject Salomon bindings prior to the rental and provision of the subject bindings to the Plaintiff. Specifically, it is believed that Hotspur Sports assembled the bindings and installed the subject Salomon bindings on the K2 skis that Hotspur Sports provided to Plaintiff as a replacement set of skis in place of the original skis rented by Plaintiff on March 8, 2014. In addition, Hotspur Sports is believed to have tested the functional performance of the Salomon bindings before renting them to the public and to the Plaintiff. It is further believed that Hotspur Sports adjusted or should have adjusted the bindings for Plaintiff's boot sole length, age, height, weight and skiing ability prior to providing the skis and subject bindings to Plaintiff as a replacement set in place of the original skis rented by Plaintiff on March 9, 2014.

15. **Hotspur Sports as "Manufacturer."** Hotspur Sports is a "manufacturer" for purposes of and as defined in the Colorado Product Liability Act. Hotspur Sports assembled, installed, prepared, tested, adjusted and rented the subject skis and subject bindings being used by Plaintiff on March 9, 2014 and is accordingly deemed a manufacturer of the subject bindings pursuant to C.R.S. §§ 13-21-401 and 13-21-402 and for purposes of the Colorado Product Liability Act.

16. Some of the allegations herein are made and/or may be perceived to be made in the alternative. To the extent required or necessary, Plaintiff will elect which claims and allegations he will pursue prior to trial.

## COUNTS AGAINST HOTSPUR SPORTS

## COUNT I
## Negligence v. Hotspur Sports

17. Plaintiff incorporates all allegations made elsewhere in this Complaint.

18. At all times relevant, Hotspur Sports was engaged in the business of operating ski rental shops and facilities, including the Hotspur Sports shop in or near Breckenridge that rented Mr. Lawton the original set of skis and bindings on March 8, 2014 and that provided him the replacement set of skis and bindings that he used for the first time on March 9, 2014.

19. As part of its business of operating ski rental shops, Hotspur Sports was in the business of purchasing skis and bindings, installing bindings onto rental skis, testing bindings to ensure they were releasing within specification, and adjusting bindings on rental skis including both forward pressure adjustments and DIN setting adjustments.

20. Hotspur Sports owed a duty to their rental customers to adequately test, inspect and adjust ski bindings, including the subject bindings, before providing, selling or renting those bindings to consumers who could be placed at serious risk of injury if the bindings were not properly tested, inspected or adjusted.

21. Hotspur Sports owed a duty to their customers to properly and adequately test, inspect and adjust the ski bindings rented and supplied by Hotspur Sports to ensure that the bindings were properly set and that the bindings would release within the accepted and published "inspection" and/or "in-use" ranges. This required Hotspur Sports to properly adjust the forward pressure setting for the customer's boot sole length and the DIN settings for the customer's height, weight, age and skiing ability.

22. Hotspur Sports had a duty not to provide or rent to any customers or consumers, such as the Plaintiff, bindings that were susceptible to premature release.

23. Hotspur Sports had a duty not to provide or rent to any customers or consumers,

such as the Plaintiff, bindings that would release at values lower than the accepted and published "inspection" and/or "in-use" ranges.

24. Hotspur Sports had a duty not to provide or rent to any customers or consumers, such as the Plaintiff, bindings that would release without warning, without a fall, without hitting any obstructions or bumps, and under circumstances in which an injury would be likely.

25. Hotspur Sports breached its aforesaid duties by carelessly preparing, testing, inspecting and adjusting, improperly adjusting and/or failing to adjust the subject bindings prior to renting and providing them to Plaintiff. Both bindings prematurely released suddenly and without warning on a groomed surface causing Plaintiff to fall and suffer serious, life threatening injuries. The premature, unnecessary and dangerous release of the bindings was caused by a deficient condition in the bindings and/or by their negligent and improper adjustment, preparation, inspection and installation by Hotspur Sports. Had the bindings had a proper forward pressure setting, proper DIN settings and had they been performing properly and releasing within specification (i.e., within the published inspection and/or in use ranges), the bindings would not have released on the date of the accident and Mr. Lawton would not have been injured. Had Hotspur Sports safely and properly adjusted, prepared and inspected the subject bindings prior to providing them to Plaintiff, the bindings would not have released on the date of the accident and Mr. Lawton would not have been injured.

26. Hotspur Sports breached its duties to Plaintiff by providing him with a set of bindings that prematurely released, resulting in life-threatening injuries, including a traumatic brain injury, multiple fractured cervical and thoracic vertebrae, broken arm, broken sternum, broken ribs, lung injuries, and injuries causing vision impairment.

27. If Hotspur Sports had conducted proper testing and inspection of the bindings

6

rented and provided to the Plaintiff and properly adjusted those bindings for Plaintiffs' boot sole length and his age, height weight and skier ability, the bindings would not have prematurely released and caused Plaintiffs' severe injuries.

28. Hotspur Sports' independent acts of negligence as set forth in this Count were a proximate cause of the serious injuries and resulting damages to Plaintiff.

WHEREFORE, the Plaintiff demands judgment in his favor and against the Defendants in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

## COUNT II
### Strict Liability v. Hotspur Sports

29. Plaintiff incorporates all allegations made elsewhere in this Complaint.

30. At all times relevant hereto, Hotspur Sports was in the business of assembling, testing, adjusting, installing, equipping, marketing, fabricating, supplying and renting skis and bindings for use in Colorado, including the subject Salomon bindings being used by Plaintiff at the time of his accident (hereinafter "the subject bindings").

31. At the time the subject bindings left the control of Hotspur Sports, they were defective and unreasonably dangerous to a person who might be expected to use them. These defects include, but are not limited to, the conditions described elsewhere in this complaint and in the following paragraphs.

32. The subject bindings were assembled, installed, adjusted, tested, rented and provided such that they could and would prematurely release under circumstances in which such a premature release was likely to cause serious injuries.

33. The subject bindings were assembled, installed, adjusted, tested, rented and provided such that they could and would release at levels below the published inspection and in

use ranges and thereby subject the user to serious injury.

34. The bindings were unduly susceptible to prematurely releasing under circumstances where a release would cause a fall and likely serious injuries.

35. The subject bindings did not perform as intended by their design and as required in order to avoid injury to the skier. Specifically, the subject bindings prematurely released while Plaintiff was skiing on a groomed run without moguls, bumps, crevices or obstructions that could otherwise cause a bindings release and without Plaintiff falling down. The bindings released for no apparent reason and under conditions in which a safely adjusted and operating pair of bindings would not have released. By releasing prematurely, the subject bindings caused Plaintiff to fall and suffer serious injury.

36. The subject bindings were defective and unreasonably dangerous in that they prematurely released under circumstances in which properly functioning bindings with a proper forward pressure setting and proper DIN settings would not have released. On the date of the accident and under the foreseeable conditions in which they were being used, the subject bindings should not have released but did prematurely release and thereby caused Plaintiff to suffer serious injuries.

37. The subject bindings were expected by Hotspur Sports to reach, and did reach, the user without substantial change in the condition in which they were placed on the rental market.

38. Plaintiff Stephen Lawton was a person who would reasonably be expected to use the subject bindings.

39. Defects in the subject bindings caused the bindings to prematurely release, thereby causing Plaintiff to fall and suffer severe injuries requiring hospitalization and surgery. The subject bindings caused the fall and the injuries.

8

40. The subject bindings released on the date of the subject accident during conditions under which properly functioning and properly adjusted bindings would not have and should not have released.

41. The defects in the subject bindings were a proximate cause of the serious and debilitating injuries suffered by Plaintiff.

42. Hotspur Sports is strictly liable to the Plaintiff for the injuries, damages, and losses caused by defects in the subject bindings.

43. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject bindings, Plaintiff has incurred substantial damages, set forth fully herein.

WHEREFORE, the Plaintiff demands judgment in his favor and against the Defendants in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

## COUNT III
## Breach of Warranty v. Hotspur Sports

44. Plaintiff incorporates all other allegations in this complaint as if set forth herein.

45. Hotspur Sports knew or had reason to know the particular purposes for which the subject bindings were required and were to be used, and that renters and users such as the Plaintiff would rely on Hotspur Sports' skill or judgment in designing, testing, assembling, manufacturing, equipping, marketing, distributing, selling, adjusting, supplying, renting and providing goods suitable for such purposes and uses.

46. The subject bindings were not fit for the particular purposes for which they were intended, and for which they were used.

47. The subject bindings did not conform to the warranties, affirmations, and representations made by Hotspur Sports.

48. Hotspur Sports' breach of its express and implied warranties was a cause of the serious, permanent, and debilitating injuries to Plaintiff.

49. As a direct and proximate result of Hotspur Sports' breach of its express and implied warranties, Plaintiff incurred substantial injuries, damages, and losses, which are set forth fully in the damage allegations.

WHEREFORE, the Plaintiff demands judgment in his favor and against the Defendants in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

## COUNT IV
## Negligent Hiring, Training and
## Supervision v. Hotspur Sports

50. Plaintiff incorporates all other allegations in this complaint as if set forth herein.

51. Hotspur Sports failed to adequately train its technicians to show customers the rental agreement and to verify that the DIN settings on the subject bindings were the same as on the rental agreement.

52. Hotspur Sports failed to adequately train its technicians to read, become familiar with, and follow key safety manuals, such as the Salomon Shop Manual.

53. Hotspur Sports failed to adequately train its technicians to properly adjust bindings prior to renting them out to customers.

54. Hotspur Sports failed to adequately supervise its technicians to ensure they were complying with important safety rules and procedures.

55. Hotspur Sports negligently hired, supervised and trained the technicians involved in providing Plaintiff with the subject bindings.

56. Hotspur Sports' negligent hiring of and its failure to adequately supervise and to adequately train its ski technicians was a cause of and contributed to Mr. Lawton's accident and resulting injuries.

57. As a direct and proximate result of Hotspur Sports' negligent hiring, supervision and training of its ski technicians, Plaintiff incurred substantial injuries, damages, and losses, which are set forth fully in the damage allegations.

WHEREFORE, the Plaintiff demands judgment in his favor and against the Defendants in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

## COUNT V
## Gross Negligence v. Hotspur Sports

58. Plaintiff incorporates herein all alllegations made elsewhere in this Complaint.

59. In engaging in the acts and omissions set forth herein causing Plaintiff's injuries, Defendants acted willfully, wantonly and recklessly, without regard for the consequences or rights or safety of the Plaintiff. As such, Defendants were grossly negligent and that gross negligence was a cause of Plaintiff's injuries. Defendant's acts of gross negligence include but are not limited to the following acts and omissions set forth in this count.

60. Defendants operated their ski shop in a manner that was contrary to

11

official store safety policy and contrary to the norms and standards within the ski industry, which made it likely that customers would receive skis and bindings that were not properly adjusted and which posed a threat to their safety.

61. The dialing in of proper DIN settings on ski bindings is a critical safety procedure. Having proper DIN settings determines whether the bindings will function properly. Hotspur Sports knows that improper DIN settings significantly increase the chance of injury, either through a premature bindings release or through a failure of the bindings to release. Defendants took inadequate measures to ensure that technicians input the proper DIN settings, and the Defendants failed to follow their own safety procedures as regarding DIN settings.

62. The Defendants had a policy and a requirement that technicians show customers the DIN settings on the rental agreement and the actual DIN settings on the rental bindings to point out and make clear that the rental bindings contain the same DIN settings as reflected on the rental agreement. Customers have no way of verifying that the DIN settings on the rental agreement are the same as the DIN settings on their rental bindings unless they are shown the rental agreement at the same time that the DIN settings on the rental bindings are pointed out by the technician. Defendants, however, did not follow this procedure. The technician who provided Mr. Lawton with his initial (damaged) skis and bindings was unaware of whether he was even required to follow this procedure. The technician who later provided Mr. Lawton the subject skis and bindings *did not follow* this procedure. This failure to follow the store policy was also contrary to industry custom, procedure and standards.

63. The technician who adjusted the subject bindings did not recall engaging

the "release" on the toe and heel that allows the binding to slide before providing the subject bindings to Mr. Lawton.  This is a fundamental adjustment that is necessary for the safe functioning of the bindings.  Failure to engage the release renders a set of rental bindings incapable of safely performing as designed and intended and renders them susceptible to complete failure.  Failure to engage the release on a set of rental bindings is akin to failing to properly secure the lug nuts on a tire.

64. Defendants did not properly inspect the skis and bindings before providing them to Mr. Lawton.  The first set of skis never should have left the shop since they were damaged and contained a "Do Not Rent" sticker.  The subject bindings contained on the second set of skis provided to Mr. Lawton contained a loose screw, which could affect performance and which demonstrated a lack of proper review and inspection of the equipment before it left the shop.  Company personnel admitted that technicians should catch things like loose screws before releasing the equipment.

65. Defendant's technicians, including the technician who provided Mr. Lawton with the subject bindings, did not read important safety manuals, despite being required to do so.  For example, Defendants' technicians were required to and expected to follow the Soloman shop practice guide, but the technician that provided Mr. Lawton the subject bindings had never even seen such manual.  This was such a significant breach of company policy that the Defendants' corporate representative testified that he found it "very surprising."

66. Defendants repeatedly rented out damaged equipment and equipment with malfunctioning bindings.   On the day before his accident, Mr. Lawton was given a ski that had a delaminating tail and had a "Do Not Rent" sticker on it.  On the same day, his

13

brother in law rented bindings from Defendants that repeatedly prematurely and inadvertently released, causing him to come out of his skis prematurely subjecting him to potential injury. The subject bindings provided to Mr. Lawton the evening after his first day of skiing was the third deficient piece of equipment rented out to the two men over a two day period (meaning that three out of three sets of rental skis and bindings rented to Mr. Lawton and his brother in law were deficient and unsafe), which reflects a recklessly run ski rental operation and a complete disregard for customer safety.

67. Defendants operated their ski shop without any written procedures or any procedures whatsoever governing the use of damaged equipment marked with a "Do Not Rent" sticker. Treatment of such equipment was addressed on a case by case basis which made it likely that damaged equipment would be provided to customers, as was the case with the first set of skis provided to Mr. Lawton.

68. Defendants knew that their shop personnel were required to show customers the DIN settings on the rental agreement and point out the identical DIN settings on the actual skis and bindings, and Defendants knew that this was an important safety procedure. Defendants nevertheless did not undertake sufficient measures to ensure their shop personnel did so. Of the two technicians that provided skis to Mr. Lawton, one was unaware of the policy and the other admittedly did not follow the policy. This reflects a conscious disregard for customer safety in that the Defendants failed to undertake even minimal efforts and procedures to ensure that this critical safety rule was followed.

69. The way in which Defendants rented and provided equipment to the public, including Mr. Lawton, reflected an operation that was neither safety conscious

nor safely operated and that provided equipment to the public with a conscious disregard for customer safety.

70. Defendants' gross negligence was a proximate cause of Mr. Lawton's accident and his injuries and damages.

WHEREFORE, the Plaintiff demands judgment in his favor and against the Defendants in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

### CAUSATION & DAMAGES
### (Hotspur Sports)

71. Plaintiff incorporates herein all allegations made elsewhere in this Complaint

72. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject bindings and the Defendants' acts and omissions set forth above, Plaintiff has incurred and seeks the following general and special damages:

    (a) Pain and suffering and emotional distress, past and future;

    (b) Reasonable and necessary medical, hospital, and rehabilitation care and services, nursing care and services, medication, therapy, and other expenses, past and future;

    (c) Inconvenience;

    (d) Loss of enjoyment of life or impairment of the quality of life;

    (e) Loss of earnings and earning capacity;

    (f) Physical impairment;

      (g)      Disfigurement and scarring.

      (h)      Any other losses and damages sustained by Plaintiff and to which he is legally entitled either pursuant to statute or the common law.

**WHEREFORE,** Plaintiff prays for and demands an award of damages to be fixed by the trier of fact in a reasonable amount. Additionally, Plaintiff asks for the costs of this action, reasonable attorney fees, all pre-judgment and post-judgment interest as provided by law, and for all such other relief to which he is legally entitled and as the Court deems appropriate.

### PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted,

*s/ Paul J. Komyatte*
Paul J. Komyatte, #22750
The Komyatte Law Firm LLC
1536 Cole Blvd., Suite 300
Lakewood, CO  80401
Office:  (720) 975-TKLF (8553)
Fax:     (720) 528-8072
paul@komyattelawfirm.com

**Attorney for Plaintiff**