**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Case No. 16-cv-00570-RM-KMT

STEPHEN LAWTON,

    Plaintiff,

v.

HOTSPUR SPORTS COMPANY, INC., *et al.*,

    Defendants.

___

**OPINION AND ORDER**
___

Pending before the Court is defendant Hotspur Sports Company, Inc.'s ("defendant") motion to exclude Seth Bayer ("Bayer") and Stanley Gale ("Gale") from testifying at trial (ECF No. 30).[1] Plaintiff Stephen Lawton ("plaintiff") has responded in opposition to the motion (ECF No. 38), and filed an affidavit from Bayer ("the Bayer affidavit") (ECF No. 38-2 at 2-21). Defendant has filed a reply in support of the motion, and asked the Court to strike the Bayer affidavit. (ECF No. 41.) The Court makes the following findings.

**I.    Legal Standard**

Rule 702 of the Federal Rules of Evidence ("Rule 702") governs the admission of expert evidence in federal court. Fed.R.Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167 (1999). Rule 702 provides as follows.

---

[1] Also pending before the Court is a motion for summary judgment, which will be addressed in a separate opinion.

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.

The Court's role in considering proposed expert evidence is one of a "gatekeeper." *Kumho Tire*, 526 U.S. at 147. Factors that might be relevant in carrying out this role include: (1) whether a theory or technique can be or has been tested; (2) whether a theory or technique has been subjected to peer review and publication; (3) whether there is a high known or potential rate of error to a technique and whether there are standards controlling the technique's operation; and (4) whether the theory or technique enjoys general acceptance within a relevant community. *Id*. at 149-150. These factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id*. at 150 (quotation omitted).

The proponent of expert evidence bears the burden of establishing its admissibility. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001).

## II. Discussion

### A. Bayer

As an initial matter, the Court addresses the Bayer affidavit. Plaintiff submitted the Bayer affidavit with its response to the instant motion for the apparent reason to provide additional detail about Bayer's work, methodology, and conclusions. (*See* ECF No. 38 at 2-3.) As defendant argues in reply (ECF No. 41 at 1-4), this was improper. Although the Court is less concerned with Bayer attempting to rebut defendant's arguments for excluding his original expert report, Bayer attempts

to do far more than that. The Bayer affidavit at 19 pages (over twice the length of Bayer's actual expert report) is essentially a brand new expert report. It provides far greater explanation of Bayer's opinions, throws in diagrams and mathematical calculations that do not exist in the original expert report, and appears to adopt an opinion from Gale's expert report. (*See generally* ECF No. 38-2 at 2-21.) The deadline to exchange expert witness disclosures, though, was extended to only December 30, 2016. (ECF No. 25.) The affidavit was filed on March 21, 2017 (ECF No. 38), and plaintiff provides no reason or explanation for why the late-filed affidavit is properly before the Court such as that Bayer had possession of information that was not previously available to him. Therefore, the Court will not consider the Bayer affidavit in assessing the instant motion, and will consider only the original expert report of Bayer that was properly disclosed. *See Scholl v. Pateder*, 2012 WL 2360542, at *3 (D. Colo. June 20, 2012) (explaining that a supplemental expert report that states additional opinions or seeks to strengthen or deepen opinions "exceeds the bounds of permissible supplementation," but declining to exclude a supplemental report because the information upon which it was premised had not been available at the time of the original report).

Turning to defendant's objections to Bayer's original expert report, defendant contends that Bayer's opinions are (1) contrary to the evidence; (2) not the product of a reliable methodology; and (3) amount to conjecture. (ECF No. 30 at 6-7.) The Court disagrees.

Defendant first asserts that Bayer could not determine what aspect of plaintiff's boot/binding system was set incorrectly, and thus, Bayer should not be permitted to list possibilities at trial. (*Id*. at 7.) Merely because Bayer could not determine the *precise* fault in the boot/binding system, though, does not diminish his overall opinion that there was a fault in the system and that fault was

3

due to defendant not setting the system appropriately. (ECF No. 30-1 at 7-8.)[2] More specifically, Bayer opined that the fault in the boot/binding system was defendant's improper setting of either the system's visual indicator setting or its forward pressure setting. (*Id*.)

Defendant next asserts that Bayer's opinion that the visual indicator setting was set to "5" is contrary to undisputed evidence. (ECF No. 30 at 7.) Defendant points to the declarations of two of its employees. The first declaration discusses the visual indicator setting observed on the boot/binding system during a test performed the day after plaintiff's injury. (*See* ECF No. 30-6 at ¶¶ 4-5.) Thus, that test is not undisputed evidence of the setting the day before. As for the second declaration, it is more relevant because the employee states that he inspected the boot/binding system "[u]pon the return of the skis," and the visual indicator setting was an "8." (*See* ECF No. 30-8 at ¶ 3.) However, even if the employee's statements can be considered evidence of the visual indicator setting being an "8" when plaintiff used the skis,[3] that does not mean that Bayer was required to accept the evidence if his expert evaluation of the incident led him to an opposite conclusion. Put another way, a jury will be able to consider the apparently opposing testimony of defendant's employee and Bayer, and come to its own conclusion as to who is more believable. The fact, though, that their testimonies may be opposing does not mean that a jury should not consider them both.

Defendant next asserts that the forward pressure setting was tested the day following plaintiff's accident, and Bayer could not recall the testimony about the test. (ECF No. 30 at 7.)

---

[2] With respect to the expert reports of both Bayer and Gale, the Court cites to the pages number(s) assigned to the reports by the CM/ECF system in the top right hand corner of the document, rather than to any page number assigned by the report itself.

[3] The Court notes that this issue—the visual indicator setting of plaintiff's skis—is purportedly disputed for purposes of defendant's motion for summary judgment, and the Court makes no attempt to resolve that dispute in this Opinion.

Defendant asserts that Bayer testified that there was no indication as to what boot sole was used for purposes of the test, but also testified that he could not recall the testimony about the boot size used. (*Id*. at 6.) Defendant cites to testimony from one of its employees where the witness testifies that the size of the boot sole used for the test was 334mm. (*Id*. at 6 n.3.) That selective citation is accurate, but it ignores that the witness also testified that plaintiff's boot sole size was 335mm. (ECF No. 30-7 at 25:2-5.) The Court has no idea what difference 1mm may make, and the parties make no attempt to explain whether such a discrepancy would make any difference, but, the alleged boot sole used was not the same as plaintiff's boot sole. The Court also notes that it is unprepared to strike an expert's testimony when so many of the pertinent settings or measurements in this case were not properly documented at the time (such as the visual indicator setting at the time the skis were returned or the boot sole size used to test the forward pressure setting), with defendant now using long after-the-fact deposition testimony and/or declarations to fill in the gaps with numbers that fit defendant's narrative. As far as the Court is concerned, it is a job for the fact finder to resolve whether the lack of contemporaneous recordations is relevant to the trustworthiness of defendant's witnesses after-the-fact recollections.

Defendant next asserts that Bayer testified he could not rule out that plaintiff had been properly released from the boot/binding system while in "forward lean." (ECF No. 30 at 7.) The fact that Bayer could not categorically rule an eventuality out, however, has no bearing on whether Bayer believes such an eventuality occurred in this case, given that Bayer conditioned his responses on there being a collision with an "environmental hazard." (*See* ECF No. 30-5 at 55:20-56:3.) Bayer's opinions in his expert report are not premised on a collision with any environmental hazard, and he observed that a person skiing with plaintiff testified that rocks were not seen. (ECF No. 30-1

at 3.) To the extent that defendant believes that a collision with an environmental hazard occurred, and thus, undermines Bayer's opinions, defendant can present evidence to that affect to a jury, but it is no reason to strike Bayer's testimony.

In its reply, defendant adds some new arguments against Bayer's testimony. Defendant asserts that Bayer eliminated the potential for "environmental contamination" causing plaintiff's injury because plaintiff scraped snow and ice off the bottom of his ski boots before stepping into the bindings. (ECF No. 41 at 5.) Defendant asserts that plaintiff's testimony leaves open the possibility that plaintiff did not get all of the snow off his boots. (*Id.*) This mischaracterizes plaintiff's testimony, however, as, although plaintiff stated he did not have a "specific recollection" of what he did on the day of his accident, his "normal routine" was to clean snow and ice off his boots, and there was nothing special about the day of his accident that would have caused him to act differently. (*See* ECF No. 37-4 at 56:18-57:1.)

Next, defendant asserts that there are questions about the completeness of the observations of the person skiing with plaintiff about the conditions of the ski trail. (ECF No. 41 at 6.) As an initial matter, this is the first time that questions have been raised about plaintiff's companion's observations about the ski trail, they certainly were not raised in defendant's motion. In any event, to the extent defendant believes that the companion's testimony is inconclusive about what he observed on the ski trail or where he observed those things, defendant will be more than able to challenge those purported issues when cross-examining the companion and/or Bayer. The Court also notes that defendant presents no evidence that the ski trail was in any condition other than that suggested by plaintiff's companion.

Finally, defendant asserts that, although Bayer ruled out a collision with an "environmental hazard" as causing plaintiff's accident, Bayer testified that plaintiff would not have released from the boot/binding system at either a visual indicator setting of 5 or 8 without such a collision. (ECF No. 41 at 7.) The testimony defendant cites may appear superficially helpful, but the portion of Bayer's deposition testimony that has been provided may not support defendant's point. Notably, although Bayer affirmed that, for bindings on both skis to release "simultaneously" under either a visual indicator setting of 5 or 8, there would need to be "an environmental issue that caused the release," this answer was made in the context of plaintiff being ejected from his skis in a "forward pitch." (*See* ECF No. 41-1 at 61:25-62:24.) In other words, it appears that Bayer testified that, if plaintiff was in a "forward pitch," he still would not have been ejected from his skis without colliding with an environmental hazard, whether using a 5 or 8 visual indicator setting. Plaintiff being in a "forward pitch," however, is not an assumption underlining Bayer's opinion. That being said, whether plaintiff being in a "forward pitch" was pertinent to the cited portion of Bayer's testimony is unclear. But, that is mainly due to the fact that plaintiff has not had an opportunity to present his construction of the testimony, as this issue was raised for the first time in defendant's reply. As such, the Court deems it improper to resolve the issue. To the extent defendant remains convinced that Bayer's deposition testimony undermines his opinion about the setting of the visual indicator, defendant will be able to challenge that opinion on cross-examination.

In summary, the Court rejects the reasons defendant provides for excluding Bayer's testimony, finds that Bayer's opinions satisfy Rule 702, and thus, DENIES the motion to exclude with respect to Bayer.

**B. Gale**

Defendant objects to the admission of Gale's testimony because (1) he is unqualified, and (2) his opinions involve speculation and are contrary to the evidence. (ECF No. 30 at 8-11.) Construing the motion to exclude liberally, at most, defendant's objections go to Gale's opinions about the proximate cause for plaintiff's accident and the standards of care "in the industry." As plaintiff points out in response, though, Gale's also opined on whether plaintiff caused the accident, whether plaintiff fell, and whether the ski resort caused plaintiff's accident. (*See* ECF No. 38 at 20.) In reply, defendant does not address plaintiff's argument; instead, defendant states that all of Gale's opinions relate to "technical aspects of how bindings function and ski shop practices." (*See* ECF No. 41 at 8.) That is simply not true.

Notably, Gale opined that plaintiff's skiing was controlled, his speed was not excessive, and he was compliant with the Colorado Ski Safety Act and "Your Responsibility Code." (ECF No. 30-3 at 22.) Gale further opined that, based upon his experience responding to accidents on ski slopes, skis are "strewn about" after a fall, and, based upon his experience as a ski patroller, he would have expected a "sitzmark" in the snow had plaintiff fallen. (*Id*. at 23.) Gale also opined that there was no evidence that the ski resort caused the accident, as the groomed conditions of the trail were "ideal for a cruising warm up run." (*Id*.) With respect to the first two opinions, the Court finds that those opinions are within the confines of Gale's experience as a ski instructor and ski patroller. Most important is Gale's experience instructing the public as to the "Your Responsibility Code," and identifying reckless and out of control skiers. (*See* ECF No. 30-4 at 3.) With respect to the latter opinion, although Gale's expert report and curriculum vitae fail to show how Gale possesses

experience determining whether a ski resort caused a skiing accident,[4] defendant does not object to Gale's opinion in this regard. Thus, without a proper objection to the opinion that the ski resort did not cause plaintiff's accident, the Court declines to exclude it sua sponte.

This leaves Gale's opinions about the proximate cause of plaintiff's accident and defendant's purported "grossly negligent conduct." The Court finds that both opinions are far outside the ambit of Gale's experience, and thus, finds that he is not qualified to opine on those matters. First, proximate causation. Gale appears to understand the important factor in this regard, as, in his expert report, he stated that he has "expert knowledge as to the causes for bindings to release." (*See* ECF No. 30-3 at 5.) That is the important factor here—*why* did the bindings on plaintiff's skis release simultaneously. The problem is that, despite Gale's statement of expert knowledge on this front, there is no evidence of the same. In arguing that Gale is qualified, although plaintiff goes to great lengths to remind the Court of Gale's experience in ski safety, ski patrol, ski instructing, and even ski collisions, plaintiff notably avoids mentioning any experience showing that Gale would know *why* a binding would release. Although Gale may not need to be a "bindings expert," whatever that term may mean, Gale must still have some experience or knowledge of what causes bindings to release.

Plaintiff asserts that Gale was disclosed as an expert in "ski safety," but plaintiff never explains what "ski safety" means or how it is relevant to the bindings on plaintiff's skis releasing. (*See* ECF No. 38 at 16.) Plaintiff further asserts that Gale was asked to investigate the proximate cause of plaintiff's accident. (*Id*.) The problem is that Gale opined that the proximate cause of

---

[4] There is, for example, no explanation of how Gale is aware of the "industry standards, customs and practices" for ski resorts. (*See* ECF No. 30-3 at 8, 23.) Based upon the complete lack of explanation, the Court is unprepared to find that Gale's experience as a ski instructor and ski patroller has provided him with knowledge of these standards, customs, and practices.

plaintiff's accident was his premature release from the ski bindings. (*See* ECF No. 30-3 at 25.) Although Gale then gives a laundry list of why plaintiff may have been released from the bindings (*see id*. at 25-27), none of those reasons are based upon Gale's experience. Notably, Gale has no experience in determining whether the visual indicator settings and forward release settings were properly adjusted on plaintiff's bindings. It is also notable that, much like Bayer, Gale eliminates "other possible causes" such as snow on the bottom of plaintiff's ski boots and obstructions on the ski trail (*see id*. at 25), but, unlike Bayer, Gale does not use any expertise to come to the conclusion that still other causes, such as improper settings on the ski bindings, caused plaintiff's accident. Instead, Gale simply states that there were improper settings. Gale also asserts that "[p]remature binding release can only be caused in certain ways," but then never states how he knows or determined this. (*See id*. at 25.) Moreover, as for Gale's examination of the skis (*see id*. at 25-26), that examination occurred in November 2016—more than two years after plaintiff's accident in March 2014 (*see id*. at 5, 9). As such, the Court can not discern why any observed problems with the skis more than two years after the accident are relevant to whether those problems existed at the time of the accident.

In summary, there is simply no application of knowledge, experience, or expertise to the conclusion Gale reaches about proximate cause. As a result, because Gale's opinions about the proximate cause of plaintiff's accident are far outside any reasonable construction of Gale's experiences and knowledge—specifically, *why* the bindings on plaintiff's skis released prematurely—Gale is not qualified to testify on those matters.[5]

---

[5] The Court notes that the closest Gale may come to having knowledge or experience with respect to ski bindings (as well as potentially ski shop procedures) is buried away in the "Professional Affiliations" section of his resume. Therein, it states that Gale has a professional affiliation with the American Society for Testing and Materials ("ASTM"). (ECF No. 30-4 at 8.) It then states the following: "F27 Snow Skiing

The remaining opinion is Gale's conclusion that defendant acted with gross negligence toward plaintiff. (ECF No. 30-3 at 28.) This conclusion is premised upon Gale's opinion that defendant owed certain duties to plaintiff, but failed to satisfy those duties. (*See id*. at 5-6, 28.) Again, however, there is simply no reasoned way to construe Gale's experiences so that he is qualified to speak to "the reasonable, ordinary, and accepted standard of care of other ski shops and within the industry in Colorado and nationally." (*See id*. at 6.) Notably, not one of the experiences stated in Gale's resume involves (or appears to implicate) the standards of care of ski shops. (*See generally* ECF No. 30-4.) In addition, the frequent but oblique mentions to "standards of care in the industry" or to "industry standards" that are littered throughout the expert report, provide no explanation of precisely which industry Gale is referring or how those standards pertain to defendant's business. (*See* ECF No. 30-3 at 8, 18, 24, 27.) If it is to "the ski and snow sport industry" generally (*see id*. at 2), plaintiff fails to explain how or which of those general standards are applicable to defendant or how Gale's experience has provided him with expert knowledge of the standards that are applicable to defendant. As already observed, it is certainly not evident from Gale's resume.

Moreover, to the extent Gale's opinions in this regard are premised upon plaintiff's failure to follow its own policies or other manuals, the jury does not need Gale to offer this opinion, given that it is based upon the testimony of defendant's own employees or officers, defendant's own written policies, and/or defendant's employees failure to read certain manuals. (*See id*. at 16, 18-19,

---

Committees: F 27.10 Binding Test Procedures, F 27.30 Skis and Boots, F27.50 Shop Procedures (Retail and Rental) … Additional Committees- AT ski bindings/Randonee boot to binding compatibility, and avalanche airbags." (*Id*.) What all of this means is unknown, as, in plaintiff's explanations for why Gale is qualified, plaintiff never once mentions this element of Gale's experience. (ECF No. 38 at 15-16.) Without anything more to explain this part of Gale's resume, the Court can only assume it is a number of words that have interestingly coalesced together.

23-25.)  The jury is more than capable to discern on its own whether a policy or manual was followed, and/or to understand a witness's testimony that one of defendant's employees did not follow defendant's own policies.

As a result, the Court finds that Gale is not qualified to testify about the standards of care applicable to defendant's business, and thus, the Court excludes his testimony that defendant acted with gross negligence toward plaintiff.

Finally, the Court notes the following statements in Gale's expert report that would not be allowed.  Paragraph 5.19 is a Gale's opinion that witness impeached himself during a deposition.  (*See* ECF No. 30-3 at 17.)  The Court will simply say that, that paragraph is far from Gale's remit upon which to opine.  Gale's speculation at the end of paragraph 5.20 is also unhelpful to the jury, as it does not involve any expertise.  (*See id.*)  Gale's criticism of defendant's disclosure habits, as well as commentary on exhibits, in paragraphs 5.30 and 5.31 is also unhelpful as it does not involve any expertise.  (*See id*. at 19-20.)  Simply put, it is not Gale's role to opine on whether statements in an exhibit are "logical[]."  (*See id*. at 20.)  The same is true for Gale's quip at the end of paragraph 5.33.  (*See id*. at 22.)  The jury also does not need to know that Gale agrees with the testimony of various witnesses, as he does in paragraphs 6.5, 6.8, and 6.9.  (*See id* at 23-24.)

In summary, Gale will be allowed to opine that (1) he does not believe plaintiff fell while skiing before the accident, (2) he does not believe that plaintiff caused the accident, and (3) he does not believe that the ski resort caused the accident.  In **all** other respects, Gale will not be permitted to testify.  As a result, the motion to exclude is GRANTED IN PART and DENIED IN PART with respect to Gale's testimony.

**III.    Conclusion**

For the reasons discussed herein, the Court GRANTS IN PART and DENIES IN PART defendant's motion for exclusion of expert testimony (ECF No. 30).

**SO ORDERED.**

DATED this 21st day of June, 2017.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge